**ORIGINAL**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 2 4 2009

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

| | | |
|---|---|---|
| TPI HOLDINGS, INC., and DOMINION ENTERPRISES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. |
| WINFIELD DYCO HOLDINGS LTD, and NATCO TRADING COMPANY, INC., | ) ) ) ) | **-ODE**<br>**1:09-CV-0801** |
| Defendants. | ) ) ) | |

## COMPLAINT

Plaintiffs TPI Holdings, Inc. and Dominion Enterprises state their complaint against Defendants Winfield Dyco Holdings Ltd. and Natco Trading Company, Inc. (collectively "Defendants") as follows:

### Nature of the Action

1.     This is an action at law and in equity for breach of contract, for trademark infringement and unfair competition arising under the federal Lanham Act, codified as amended at 15 U.S.C. §§ 1051-1127, and for cybersquatting under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

1

US2000 11298678.2

## Jurisdiction

2.      This Court has original and subject matter jurisdiction over this action

pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the case arises in part under the

Lanham Act, 15 U.S.C. 1051 *et. seq.* and under 28 U.S.C. § 1332 because the matter

in controversy exceeds the sum or value of $75,000, exclusive of interest and costs,

and is between citizens of different states.

3.      This Court has personal jurisdiction over the Defendants because

Defendants have contractually consented to this Court's jurisdiction, and further

because Defendants are transacting business within this district, and have otherwise

made purposeful contact with this district sufficient to permit the exercise of

personal jurisdiction.

4.      Venue is proper in this district under 28 U.S.C. § 1391(d) because

Defendants are aliens.

## Parties

5.      Plaintiff TPI Holdings, Inc. ("TPI") is a corporation organized under the

laws of the State of Delaware with its principal place of business located in Atlanta,

Georgia.  TPI is the owner of the trademarks and trademark registrations at issue in

this lawsuit.

2

6.    Plaintiff Dominion Enterprises ("Dominion") is a partnership organized under the laws of Virginia, with its principal place of business located in Norfolk, Virginia.  Dominion is the licensee of certain of the trademarks at issue in this suit and the registrant of the domain names consisting of certain of the trademarks at issue.    TPI, Dominion, and their predecessors, licensees, and affiliates. are collectively hereinafter referred to as "TPI" or "Plaintiffs."

7.    Defendant Winfield Dyco Holdings Ltd. ("Winfield") is a limited company organized under the laws of British Columbia, a province of Canada, with its principal place of business at 9250 Highway 97, Winfield, British Columbia, V4Y1P9, Canada.

8.    Defendant Natco Trading Company, Inc. aka Natco Trading Corporation is a corporation organized under the laws of British Columbia, with its principal place of business at 9250 Hwy 97 North, Winfield, British Columbia, V4Y1P9, Canada.

## FACTUAL BACKGROUND
### Plaintiffs' Trademark and Service Mark Rights

9.    For more than thirty (30) years, Plaintiffs, together with their predecessors in interest, licensees, and affiliates, have adopted and used a family of

3

US2000 11298678.2

trademarks that use the term "TRADER" together with a vehicle term, such as "AUTO," "RV," "BOAT," and "AERO" (the "TRADER Marks").

10.    From the beginning, Plaintiffs used the TRADER family of marks in connection with a number of different print publications offering classified advertising respecting different types of vehicles distributed throughout the United States. Since 1996, in addition to the print publications, Plaintiffs have also offered classified advertising online in connection with the TRADER Marks.

11.    TPI is the owner of multiple federal registrations for its TRADER Marks, including the following:

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| AERO TRADER | 2288805 | 10/26/1999 |
| AERO TRADERONLINE.COM | 2873918 | 08/17/2004 |
| AUTO TRADER | 2390815 | 10/03/2000 |
| AUTO TRADER | 1247037 | 08/02/1983 |
| AUTOTRADER.COM | 2381590 | 08/29/2000 |
| BARGAIN TRADER | 2294228 | 11/23/1999 |
| BARGAIN TRADER | 1207204 | 09/07/1982 |
| BARGAIN TRADERONLINE.COM | 2901427 | 11/09/2004 |
| BIG TRUCK TRADER | 2829945 | 04/06/2004 |
| BOAT & RV TRADER | 1450690 | 08/04/1987 |
| BOAT TRADER | 2389118 | 09/26/2000 |
| BOAT TRADER | 1208249 | 09/14/1982 |
| BOAT TRADERONLINE.COM | 2873930 | 08/17/2004 |
| COLLECTOR CAR TRADER | 2294233 | 11/23/1999 |
| COLLECTOR CAR TRADERONLINE.COM | 2873929 | 08/17/2004 |
| CYCLE TRADER | 2294240 | 11/23/1999 |
| CYCLE TRADER | 1627016 | 12/11/1990 |
| CYCLE, BOAT, & RV TRADER | 1450707 | 08/04/1987 |

US2000 11298678.2

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| FREE ADS TRADER | 1886026 | 03/28/1995 |
| LUXURY CAR TRADER | 2700080 | 03/25/2003 |
| OLD CAR TRADER | 1911290 | 08/15/1995 |
| OLD CAR TRADER | 2348530 | 05/09/2000 |
| PICK-UP TRADER | 1644398 | 05/14/1991 |
| PICK-UP TRADER | 2295507 | 11/30/1999 |
| RV TRADER | 2294239 | 11/23/1999 |
| RV TRADER | 1822663 | 02/22/1994 |
| RV TRADERONLINE.COM | 2876679 | 08/24/2004 |
| TRADER ONLINE | 2302312 | 12/21/1999 |
| TRADER PLUS | 2885985 | 09/21/2004 |
| TRADER TIMES | 1718017 | 09/22/1992 |
| TRADERONLINE.COM | 3161680 | 10/24/2006 |
| TRUCK TRADER | 2817176 | 02/24/2004 |
| TRUCK TRADERONLINE.COM | 2871209 | 08/10/2004 |
| YACHT TRADER | 1648145 | 06/18/1991 |
| YACHT TRADER | 2349954 | 05/16/2000 |
| YACHT TRADERONLINE.COM | 3173201 | 11/21/2006 |

True and correct copies of print-outs from the U.S. Patent and Trademark Office online database showing these registrations are attached as collective Exhibit A. All of these registrations constitute prima facie evidence, and those that are incontestable constitute conclusive evidence, of the validity of the marks and TPI's exclusive right to use the marks in connection with the goods and services specified in the registrations.

12.    Plaintiffs initiated use of TRADER formative marks in 1974, when their predecessor first began using AUTO TRADER in connection with print publications providing classified advertising and information about automobiles and services

5

related to them.  In 1976, Plaintiffs added BOAT TRADER magazines and in 1978,

CYCLE TRADER and AERO TRADER magazines, to their publications.  Over the

years since then, Plaintiffs have adopted more than 20 additional TRADER

formative marks, including the marks OLD CAR TRADER and RV TRADER,

among others, and used them in connection with print publications featuring

classified advertising distributed throughout the United States.

13.    Beginning in at least July, 1996, Plaintiffs extended use of their

TRADER marks to provide advertising and merchandising classifieds via an online

electronic communications network.  Since that time Plaintiffs have featured their

offerings on the Internet at multiple sites utilizing TRADER domain names and

marks,   including   <autotrader.com>,   <traderonline.com>,   <boattrader.com>,

<aerotrader.com>,   <cycletrader.com>,   <rvtraderonline.com>,   and

<oldcartraderonline.com>, among others.    True  and  correct  print-outs  of

representative homepages for sites reached through Plaintiffs' TRADER domain

names are attached as Collective Exhibit B.

14.    Since the adoption of each of the TRADER Marks, Plaintiffs have made

widespread and continuous use of them, and promoted them together, in connection

with services offered to the public throughout the United States.

6

15.    As a result of Plaintiffs' substantial and continuous use and marketing of their TRADER Marks, the marks have become extremely well known to the public as strong and exclusive source identifiers of Plaintiffs' high quality reliable services.  The public has come to expect that marks used in connection with online classified advertising related to vehicles and that consist of the TRADER formative coupled with a vehicle term are associated or affiliated with, or authorized by, Plaintiffs.

### Defendants' Wrongful Acts

16.    Long after Plaintiffs' marks had become well known as source identifiers for Plaintiffs' vehicle advertising services, and after Plaintiffs had begun offering their services online in connection with the TRADER marks, Defendants registered or otherwise acquired approximately 130 domain names that included TRADER coupled with a vehicle term, some of which added a non-distinguishing descriptive term such as a state name (the "Infringing Domain Names").

17.    Defendants acquired the registrations for the Infringing Domain Names with the intent to develop sites designed to compete with Plaintiffs and intentionally to attempt to attract for commercial gain Internet users to their sites by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of Defendants' websites.

7

US2000 11298678.2

18.    Sometime after obtaining the Infringing Domain Names, Defendants began operating websites under them in direct competition with Plaintiffs. Defendants set up sites to offer online classified advertising services to owners of various types of vehicles, thereby targeting the exact customer markets targeted by Plaintiffs. Thus, Defendants have never used the sites to trade vehicles themselves, and thus do not use the term "trader" to describe their business. Nor does the term "trader" describe the users of Defendants' services. Persons who advertise on the site are seeking to sell their vehicles for money, and persons who search the sites are purchasing vehicles; neither type of user is seeking to use the site to swap vehicles with another person. Defendants have offered their services in connection with the Infringing Domain Names throughout the United States and have specifically targeted Georgia consumers.

19.    Upon discovering Defendants' infringement, in July, 2006, TPI Holdings and its then affiliate Trader Publishing Company (Dominion's predecessor in interest) filed Civil Action No. 1:06-CV-1600 in this District Court against Winfield for, *inter alia*, trademark infringement, unfair competition, and cybersquatting (the "Underlying Lawsuit").

8

20.     By agreement entered March 17, 2008 (the "Agreement") the parties settled the Underlying Lawsuit.   A true and correct copy of the Settlement Agreement is attached as Exhibit C.

21.     Under the Agreement, Defendants agreed, among other things:

a)     to transfer all the Infringing Domain Names to TPI Holdings, providing password and log-in information for the Domain Name registrations to Plaintiffs (See Agreement ¶ 3, 4a); and

b)     not to make any trademark use of any name, mark, or domain name that i) incorporates TRADER and any term for a vehicle, or ii) consists of or is confusingly similar to any of TPI's TRADER Marks, except as expressly permitted in the Agreement. (Agreement ¶ 5)

22.     The Agreement allowed Defendants to continue certain use of three of the Infringing Domain Names, i.e. rvtrader.com, airplanetrader.com, and oldcartrader.com (Agreement ¶ 7a) during a two-year phase-out period. For the first year of the phase-out period, Defendants could continue using the three Domain Names for Defendants' ongoing websites and could continue to use TRADER-formative names for these sites. In the second year, Defendants were required to:

a)     cease using TRADER as a mark on the three websites; and

9

US2000 11298678.2

b)    install at each of the Domain Names splash directional pages displaying links to both Plaintiffs' and Defendants' sites substantially in the form set forth in the Agreement.  True and correct copies of the splash directional pages set forth in the Agreement are attached hereto as Collective Exhibit D.

23.    The first anniversary of the Effective Date of the Agreement was March 17, 2009.

24.    Defendants have materially breached the Agreement in a number of ways.

25.    Instead of installing the splash directional pages required under the Agreement, (*i.e.* splash pages as shown in Exhibit D hereto), Defendants have installed and are utilizing splash directional pages as shown in Exhibit E. Defendants' pages contain language that was not permitted under the Agreement, use colors, fonts, graphics, and placements for the website links that were not permitted under the Agreement, and do not use the backgrounds required under the Agreement.  In sum, the page designs Defendants have installed bear no resemblance to the designs required under the Agreement.  The net effect of the multiple changes Defendants have made is to display links to Defendants' websites more prominently than the links to Plaintiffs' sites to continue improperly to trade on the fame of

10

Plaintiffs' marks, and to divert Internet users seeking Plaintiffs' sites to Defendants' sites.

26.     In addition, after the first anniversary, Defendants have continued to use TRADER in manners not permitted under the Agreement:  a) by using it in a source-identifying tagline for one of the sites, using the slogan "Buyer.  Seller.  *Trader Powered*," as shown in Exhibit F; b) by prominently using Plaintiffs' marks in promotion of Defendants' sites in search engine results, as illustrated in Exhibit G; and c) by prominently touting on one of the sites:  "Old Car Trader has a New Name," as shown in Exhibit H.

27.     Defendants have also failed and refused to provide the password and log-in information of the three Infringing Domain Names, intentionally preventing Plaintiffs from having all right, title, and interest in the Domain Names ownership, in contravention of the Agreement (Agreement ¶¶ 3 and 4a)

28.     Moreover, Defendants have registered and are using the domain name airplanetradeonline.com, for one of their sites, a domain name that is confusingly similar to multiple marks owned by Plaintiffs, most particularly Plaintiffs' AERO TRADERONLINE.COM and AERO TRADER Marks.

29.     Under paragraph 12 of the Agreement, the parties each agreed that:

11

a breach of this Agreement would cause irreparable harm to the other, and Winfield and TPI Holdings therefore agree that, in the event either breaches any provision of this Agreement, the non-breaching party shall be entitled to obtain immediate injunctive relief, without the posting of a bond, and to recover from the breaching party attorneys' fees and costs incurred in connection with enforcing the terms of this Agreement.

30.    Prior to March 17, 2009, Plaintiffs notified Defendants of a number of the problems respecting the splash pages that Defendants intended to install under the RVTrader Domain Name and further notified Defendants that installation of pages not in compliance with the Agreement would be a breach of the Agreement. Defendants flagrantly ignored their contractual obligations to install the correct pages and intentionally installed pages to divert Internet users seeking Plaintiffs' sites to Defendants' sites.

31.    The Settlement Agreement contained a release of Plaintiffs' claims against Winfield "conditioned upon Winfield's fulfillment of all of its obligations" under the Agreement. In view of Winfield's failure to fulfill its obligations under the Agreement, the release is of no effect.

## COUNT I
## BREACH OF CONTRACT

32.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 31 as if set forth fully herein.

12

33.    The Settlement Agreement is an enforceable contract.

34.    Defendants have materially breached the contract.

35.    Defendants' breach has caused and is causing damage to Plaintiffs by diverting consumers seeking Plaintiffs' services to Defendants' sites.

36.    Defendants' breach further is causing irreparable harm to Plaintiffs in that the losses from such diversion cannot be fully measured.

37.    In accordance with the terms of the Agreement, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief, without the posting of a bond, as a result of Defendants' breach.

38.    Plaintiffs are further entitled to recover their damages and attorneys' fees caused by Defendants' breach of contract.

## COUNT II
## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

39.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 31 as if set forth fully herein.

40.    By registering and using the Infringing Domain Names, Defendants have registered, trafficked in, and used domain names that are confusingly similar to Plaintiffs' TRADER Marks.

13

US2000 11298678.2

41.    Defendants have used all of the Infringing Domain Names and are continuing to use three of the Infringing Domain Names with a bad faith intent to profit by diverting consumers seeking Plaintiffs' sites to Defendants' sites by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of the Defendants' websites. Defendants have demonstrated their pattern and intent to trade off Plaintiffs goodwill by registering 130 Domain Names that infringe Plaintiffs' marks.

42.    Defendants' action constitutes cyberpiracy in violation of 15 U.S.C. § 1125(d).

43.    Defendants' unauthorized registration and use of the Infringing Domain Names has caused, and unless preliminarily and permanently enjoined, Defendants' continued use of the three Infringing Domain Names will continue to cause, irreparable injury to Plaintiffs and to the goodwill associated with Plaintiffs' TRADER Marks.

44.    Because Defendants' infringing conduct is causing and is likely to cause substantial injury to the public and to Plaintiffs, as Defendants admitted under the Agreement, Plaintiffs are entitled to injunctive relief, and to recover either statutory damages under 15 U.S.C. § 1117(d) or Defendants' trebled profits, together with Plaintiffs' costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

US2000 11298678.2

## COUNT III
## FEDERAL TRADEMARK AND SERVICE MARK INFRINGEMENT

45.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 31 as if set forth fully herein.

46.    Defendants have made, and through continued use that is not permitted under the Agreement, are making unauthorized use of confusingly similar imitations of Plaintiffs' registered TRADER Marks.

47.    Defendants' unauthorized use of confusingly similar imitations of Plaintiffs' registered marks is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that their businesses and services are affiliated, connected, or associated with Plaintiffs or have the sponsorship, endorsement, or approval of Plaintiffs, all in violation of 15 U.S.C. § 1114.

48.    Defendants' unauthorized use of confusingly similar imitations of Plaintiffs' registered TRADER Marks, notwithstanding their actual knowledge of Plaintiffs' ownership of the TRADER Marks, demonstrates an intentional, willful, and bad faith intent to trade on the goodwill of Plaintiffs' TRADER Marks and to cause confusion, deception, and mistake in the minds of Plaintiffs' customers and

15

potential customers to the great and irreparable injury of Plaintiffs. Defendants have

been unjustly enriched thereby.

49.    Because Defendants' infringing conduct is causing and is likely to cause

substantial injury to the public and to Plaintiffs, Plaintiffs are entitled to injunctive

relief, and to recover Defendants' trebled profits, Plaintiffs' costs, and Plaintiffs'

reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT IV**
**FEDERAL UNFAIR COMPETITION**

50.    Plaintiffs repeat and incorporate by reference the allegations contained

in Paragraphs 1 through 31 as if set forth fully herein.

51.    Defendants' use of confusingly similar imitations of Plaintiffs'

TRADER Marks has caused, and their continuing use and is likely to cause

confusion, deception, and mistake by creating the false and misleading impression

that Defendants' online businesses are affiliated, connected, or associated with

Plaintiffs or has the sponsorship, endorsement, or approval of Plaintiffs, in violation

of 15 U.S.C. § 1125(a).

52.    Defendants' unauthorized use of confusingly similar imitations of

Plaintiffs' electronic URL addresses, including their continued improper use of

<oldcartrader.com> and <rvtrader.com> domain names, and their use of the domain

16

<airplanetradeonline.com>, is causing and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' online businesses are affiliated, connected, or associated with Plaintiffs or has the sponsorship, endorsement, or approval of Plaintiffs, in violation of 15 U.S.C. § 1125(a).

53.    Defendants' actions demonstrate an intentional, willful, and bad faith intent to trade on Plaintiffs' goodwill and to cause confusion, deception, and mistake in the minds of Plaintiffs' customers and potential customers by implying a nonexistent affiliation or relationship between Defendants and Plaintiffs to the great and irreparable injury of Plaintiffs.

54.    Because Defendants' unfair competition is causing and is likely to cause substantial injury to the public and to Plaintiffs, Plaintiffs are entitled to injunctive relief, and to recover Defendants' trebled profits, Plaintiffs' costs, and Plaintiffs' reasonable attorney's fees pursuant to 15 U.S.C. §§ 1116 and 1117.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray:

1.    That Defendants, their partners, agents, employees, and all persons in active concert or participation with Defendants, be preliminarily and permanently enjoined as follows:

17

US2000 11298678.2

(a)   from using in the United States any domain name or mark that includes TRADER and a vehicle term, or that is confusingly similar to any of the TRADER marks; and

(b)   from breaching the Settlement Agreement; and

(c)   affirmatively enjoined to use the splash directional pages required under the Settlement Agreement.

2.  That a preliminary injunction order be entered requiring the domain names rvtrader.com, oldcartrader.com, and airplanetrader.com to be put on registrar hold status and removed from the TLD zone during the pendency of the action.

3.  That Plaintiffs recover from Defendants statutory damages under the Anticybersquatting Consumer Protection Act in the amount of $100,000 per Infringing Domain Name.

4.  That an accounting be ordered and judgment be rendered against Defendants for all profits received from the sale, rental, or provision of products or services in the United States in connection with Defendants' infringement and breach of the Settlement Agreement.

5.  That the award of profits resulting from Defendants' infringement, unfair competition, and false designation of origin of products and services be trebled.

6.  That Plaintiffs recover their actual damages.

18

7.  That the award of actual damages from Defendants' infringement, unfair competition, and false designation of origin of products and services be trebled.

8.  That Defendants be required to deliver up for destruction all advertising and promotional materials, labels, cartons, brochures, business stationary, calling cards, information sheets, posters, signs, and any and all other printed or graphic materials of any type that Defendants uses for promotion and sale in the United States, including the plates, molds, or other means of producing the materials, which bear references to Plaintiffs' TRADER Marks, or use confusingly similar imitations of Plaintiffs' TRADER Marks.

9.  That Defendants be directed to file with the Court and serve on Plaintiffs, within thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants has complied with the injunction.

10. That Plaintiffs be awarded their reasonable attorneys' fees and expenses in accordance with the Settlement Agreement.

11. That Plaintiffs be awarded their costs incurred in connection with this suit.

12. That Plaintiffs have such other and further relief as the Court may deem just and proper.

19

Judith A. Powell
Georgia Bar No. 586125
KILPATRICK STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia  30309
(404) 815-6500  (telephone)
(404) 815-6555  (facsimile)

Attorneys for Plaintiffs

20

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1D, the attached pleading complies with the font and point selections prescribed by Local Rule 5.1B and uses 14 point Times New Roman Font.

Judith A. Powell

US2000 11298678.2